■ In the Matter of BABY BOY L. LINDA L., et al., Appel-

lants; MR. DOE et al., Respondents. [614 NYS2d 566] —In a contested private placement adoption proceeding pursuant to Domestic Relations Law § 115, in which the natural mother's revocation of her extra-judicial consent to adoption was opposed by the adoptive parents, the natural parents appeal from an order of the Family Court, Suffolk County (Freundlich, J.), entered February 5, 1993, which, after a hearing, determined that it was in the best interests of the child to remain in the custody of the adoptive parents.

Ordered that the order is affirmed, with one bill of costs.

In this private placement adoption proceeding commenced on or about June 19, 1992, the natural mother of the child, a male infant born on June 6, 1992, filed, on July 13, 1992, a revocation of her extra-judicial consent to adoption, which had been properly executed on June 8, 1992. The revocation was timely and was thereafter opposed by the adoptive parents, resulting in a "best interests" hearing pursuant to Domestic Relations Law § 115-b (3) (b) and (6) (d) (v). At issue on this appeal is the custody of the child.

Primary among the circumstances to be considered in determining the best interests of the child are the ability to provide for the child's emotional and intellectual development, the quality of the home environment, and the parental guidance provided *(see, Eschbach v Eschbach,* 56 NY2d 167, 172). Other factors to be considered by the court include the original placement of the child, the length of that placement, the relative fitness of the parents, and the parents' financial status *(see, Klat v Klat,* 176 AD2d 922, 923).

In deciding to continue the custody of Baby Boy L. with the adoptive parents, the hearing court gave careful consideration to the foregoing factors and the following findings of fact: the natural mother, Linda L., a 24-year-old unmarried administrative assistant for a local furniture distributor, discovered that she was pregnant in or about October 1991. Her boyfriend of several years, Joseph D., an emergency medical technician in New York City, was responsible for the pregnancy. Upon learning of the pregnancy, Joseph urged Linda to terminate the pregnancy, but she refused. During the term of her pregnancy, Linda did not obtain any prenatal medical care, and managed to conceal her pregnancy from her parents, with whom she lived.

The child was born on June 6, 1992, and Linda made arrangements for the placement of the child with the adoptive parents, who assumed custody of the child upon Linda's

execution of her extra-judicial consent to the adoption. The hospital records indicated that the baby was born with a positive toxicology to cocaine. The expert testimony during the best interests hearing indicated that, based on a radioimmunoassay analysis of her hair, and a gas chromatography/mass spectrometry confirmatory test, Linda had used cocaine once or twice a week throughout her pregnancy. Linda testified that she used cocaine on only one occasion just prior to giving birth, and challenges the admissibility of the hair analysis results. The court found her explanation to be incredible, even without the drug test results. The court also found that the natural parents' reluctance to be truthful with the court negatively impacted upon their character, and questioned their qualifications as parents, noting, among other things, that they indicated only a vague intention to possibly marry at an unspecified time in the future.

In comparison, the court found the adoptive parents to be a mature, stable couple, secure emotionally, physically, and financially. The court's determination emphasized their marriage of 18 years and comfortable standard of living, and noted that the child has lived with and been cared for by the adoptive parents since the original placement.

The analysis of the various factors to be taken into account in deciding a custody question is best made by the hearing court, because that court is in the most advantageous position to evaluate the testimony, character, and sincerity of the parties (see, Eschbach v Eschbach, 56 NY2d 167, 172, supra; Matter of Nellie R. v Betty S., 187 AD2d 597). Thus, custody matters are ordinarily within the discretion of the hearing court (see, Matter of Irene O., 38 NY2d 776, 777), and its findings should be set aside only if they lack a sound and substantial basis in the record (see, Matter of Louise E. S. v W. Stephen S., 64 NY2d 946, 947; Matter of Nellie R. v Betty S., 187 AD2d 597, supra).

Based on the record before us, we conclude that the best interests of the adoptive child would be served by continuing his placement with the adoptive parents. The obvious lack of good judgment displayed by the natural mother in using cocaine even once during her pregnancy, and in failing to seek prenatal care during her pregnancy, coupled with the court's findings regarding the financial stability and overall maturity of the adoptive parents relative to that of the natural parents, enabled the court to properly find in favor of the adoptive parents. While the evidence does not necessarily support a finding that the natural parents were unfit to care for the

adoptive child, it does support a finding that they were less fit than the adoptive parents.

We have reviewed the natural parents' remaining contentions and find them to be without merit. Sullivan, J. P., Pizzuto, Santucci and Friedmann, JJ., concur.